1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   OMAR GARCIA,                                No.  1:17-cv-00890-LJO-JLT (HC)

12                 Petitioner,                   **FINDINGS AND RECOMMENDATION
                                                 TO DENY PETITION FOR WRIT OF**
13        v.                                     **HABEAS CORPUS**

14   D. ASUNCION,                                **[TWENTY-ONE DAY OBJECTION
                                                 DEADLINE]**
15                 Respondent.

16

17        Petitioner is currently serving a 36-year-to-life sentence in state prison for his conviction

18   of being a felon in possession of a firearm, unlawful possession of ammunition, and attempting to

19   dissuade a witness from testifying.  He has filed the instant habeas action challenging the

20   conviction and sentence.  As discussed below, the Court finds the claims to be without merit and

21   recommends the petition be **DENIED.**

22   **I.     PROCEDURAL HISTORY**

23        On February 24, 2014, Petitioner was found guilty in the Tulare County Superior Court of

24   being a felon in possession of a firearm, unlawful possession of ammunition, and attempting to

25   dissuade a witness.  (Doc. 1 at 1.[1])  On April 3, 2014, he was sentenced to an indeterminate term

26   of 36-years-to-life.  (Doc. 1 at 1.)  His sentence was enhanced due to having suffered two prior

27

28   ------------------------------
     [1] Page references are to ECF pagination.

                                                1

strike felonies within the meaning of California's Three Strikes law.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed the judgment on November 19, 2015. (LD 11.[2])

Petitioner next filed petitions for writ of habeas corpus in the state courts. On August 1, 2016, he filed a petition in the Tulare County Superior Court. (LD 12.) The petition was denied on August 23, 2016, in a reasoned decision. (LD 13.) He then filed a petition in the Fifth DCA, and the petition was summarily denied on December 6, 2016. (LD 14, 15.) Finally he filed a petition in the California Supreme Court on December 23, 2016. (LD 16.) The petition was summarily denied on March 22, 2017. (LD 17.)

On July 5, 2017, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on October 16, 2017. (Doc. 20.) Petitioner filed a traverse on December 7, 2017. (Doc. 25.)

## II.    FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[3]:

On March 9, 2012, defendant shot Lawrence Bierman in the arm and upper chest with a shotgun. Following defendant's apprehension, an information was filed charging defendant with attempted murder, unlawful possession of a firearm by a felon, and unlawful possession of ammunition by a felon. [FN2] The information was later amended to include a charge of attempting to dissuade a witness from testifying after the discovery of a recorded jailhouse phone call in which defendant told Bierman not to appear at defendant's preliminary examination.

> [FN2] The information also charged defendant with one count of false imprisonment by violence, which was later dismissed by the trial court.

At trial, Bierman's cousin, who witnessed the shooting, testified that defendant and Bierman had argued over marijuana, and that defendant had retrieved a shotgun and shot Bierman with it. [FN3] Defendant took the stand in his own defense and testified that Bierman attempted to steal some of the 40 to 45 pounds of marijuana defendant was in possession of, and that defendant shot Bierman in self-defense after Bierman attacked him with a knife and screwdriver. Defendant also testified that he told Bierman not to appear at the preliminary examination for "totally altruistic" reasons.

> [FN3] Bierman was called as a witness, but testified that he did not

---

[2] "LD" refers to the documents lodged by Respondent with the answer.

[3] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

remember where he lived in 2012, did not remember being shot, and did not remember giving a statement to the police. The trial court subsequently found Bierman unavailable as a witness due to his "obvious" evasion of questions and refusal to testify.

At the conclusion of trial, the jury found defendant guilty of the unlawful possession of a firearm and ammunition charges, as well as the charge of attempting to dissuade a witness from testifying, but acquitted defendant on the charge of attempted murder. At sentencing, defendant filed a *Romero* [FN4] motion to dismiss his prior strikes, which the court denied with the following statement:

> "... As to the *Romero* motion, that is denied. The defendant in my mind is certainly a career criminal. He had a shotgun. By his own admission, he was possessing 40 pounds of marijuana which he was going to sell, so you talk about him [being] gainfully employed, [but] his only employment I see here is continued criminal activity.

> "He served two prior prison terms. The strikes are crimes of violence and/or gun charges which is exactly what we have here, four felony convictions, [and he] violated his parole twice. I don't see where there's— the court has much discretion here, other than to send him to prison for the Three Strikes Law given what I've seen."

> [FN4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

Following this denial, the court went on to sentence defendant to a doubled upper-term sentence of six years for the unlawful possession of a firearm conviction, a doubled middle-term sentence of four years for the unlawful possession of ammunition conviction, and an indeterminate term of 30 years to life in prison for the conviction for attempting to dissuade a witness from testifying. This appeal followed.

People v. Garcia, 2015 WL 7302502, at *1–2 (Cal. Ct. App. 2015).

## III.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

3

1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.     Review of Claims

The petition presents eight grounds for relief. He alleges defense counsel rendered ineffective assistance in the following instances: 1) Failing to investigate his prior strike convictions before advising Petitioner to admit his prior convictions; 2) Failing to investigate the 1995 convictions to determine if they were strike convictions; 3) Failing to challenge the trial court's ruling that the victim, Lawrence Bierman, was unavailable to testify; 4) Failing to file a motion for acquittal based on lack of evidence supporting the charge of dissuading a witness; and 5) Failing to interview percipient witness Jenny Verdusco and failing to make a diligent effort to contact her in order to obtain exculpatory evidence. He further claims that the trial court erred by: 1) Failing to grant Petitioner's three Marsden motions; 2) Failing to conduct an investigation into the unavailability of witness Lawrence Bierman; and 3) Finding additional facts to elevate

Petitioner's prior offenses in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

      1.  <u>Ineffective Assistance of Counsel</u>

      a.  <u>State Court Background</u>

Petitioner presented his ineffective assistance of counsel claims to the state courts in his habeas petitions. The Tulare County Superior Court provided the last reasoned decision, as follows:

> Regarding the ineffective assistance of counsel claim, the petitioner has failed to establish the basic requirements for success on that claim. The leading cases are **Strickland v Washington 466 U.S. 668, 104 S.Ct. 2052 and In Re Hardy (2007) 41 Calth 977, 1018**)[.] The *Strickland* court stated " The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relief on as having produced a just result. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."(is. At p 687) [sic]
>
> The California Supreme Court in **In Re Alfredo Reyes Valdez (2010) 49 Cal.4th 715, 111 Cal.Rptr. 3rd 647** stated "To make the required showings, petitioner must show that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms" (Strickland Supra and Hardy Supra)Establishing [sic] a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced defendant, i.e. there is a : ["]reasonable probability["] that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This second part of the *Strickland* test "is solely one of outcome determination. Instead, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."
>
> In order to prevail on a claim of ineffective assistance of counsel a defendant must establish (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that a determination more favorable to defendant would have resulted in the absence of counsel's unprofessional errors. (*People v. Kipp* (1998) 18 Ca,4th 349, 366) . [sic] After reviewing the case this court concludes there is not a reasonable probability that a better verdict or sentence would have resulted.
>
> The court in *People v. Dennis (1998) 17 Cal.4th 468, 540-541* stated: "Our review is deferential; we make every effort to avoid the distorting effects of hindsight and

6

to evaluate counsel's conduct from counsel's perspective at the time. A court must indulge a *strong presumption* that counsel's acts were within the wide range of reasonable professional assistance".

(LD 13 at 1-2.) The claims were then raised in the appellate court and California Supreme Court, but they were rejected without comment. (LD 14-17.)

   b.   Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court

1   determination was erroneous, but also that it was objectively unreasonable.  <u>Yarborough v.</u>

2   <u>Gentry</u>, 540 U.S. 1, 5 (2003).  Moreover, because the <u>Strickland</u> standard is a general standard, a

3   state court has even more latitude to reasonably determine that a defendant has not satisfied that

4   standard.  See <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule

5   application was unreasonable requires considering the rule's specificity.  The more general the

6   rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

7           c.  <u>Failure to Investigate Prior Convictions Prior to Admitting Them as Strikes</u>

8           Petitioner first claims defense counsel was ineffective in failing to investigate his prior

9   strike convictions.  He claims his attorney advised him to admit his prior strikes without adequate

10  investigations.  However, Petitioner's attorney did not advise him to admit his prior strikes, but

11  rather to waive a jury trial on the issue.  (LD 6 at 45-47.)  His prior convictions were determined

12  to be strikes following a bench trial.  (LD 7 at 400-03.)  Thus, there is no merit to the claim.

13          Even if the claim were construed as claiming error on the part of defense counsel for his

14  advice to waive a jury trial, Petitioner cannot demonstrate prejudice.  As more fully discussed

15  below, certified copies of the information and the abstract of judgment were submitted to the trial

16  court.  (LD 7 at 401.)  These records provided irrefutable evidence that the prior convictions

17  qualified as prior strikes.  Therefore, Petitioner fails to show that counsel erred or that he suffered

18  prejudice.

19          d.  <u>Failure to Investigate 1995 Convictions</u>

20          Petitioner next faults defense counsel for failing to adequately investigate the 1995

21  convictions to determine if they were in fact qualified as strikes.  However, Petitioner fails to

22  demonstrate that counsel erred or that the alleged error was prejudicial.

23          To begin, as Respondent correctly states, the 1995 conviction for assault with a firearm is

24  a strike as a matter of California law.  Cal. Penal Code § 1192.7(c)(31).  Therefore, failing to

25  further investigate this prior was not error, and the alleged failure could not have prejudiced

26  Petitioner.

27          As for the second conviction, Petitioner was convicted of violating Cal. Penal Code §

28  245(a)(1).  As Respondent acknowledges, a conviction under § 245(a)(1) may or may not have

1    been a strike in 1995. However, the record of conviction shows that Petitioner's conviction under

2    § 245(a)(1) was for assault with a deadly weapon, which is in fact a strike offense. (LD 16, Ex. F

3    at 185.) For this reason, even if counsel would have conducted further investigation, counsel

4    would have concluded that he had no grounds to challenge the strike conviction. Thus, Petitioner

5    fails to show he suffered any prejudice.

6            e.    Failure to Properly Object to Trial Court Decision Concerning Lawrence Bierman

7            Petitioner next argues that counsel failed to properly object when the trial court concluded

8    that Lawrence Bierman was unavailable to testify. However, the record shows that counsel did in

9    fact object. Therefore, counsel did not err, and Petitioner cannot show any prejudice.

10           The victim, Lawrence Bierman, testified extensively at the preliminary hearing. (LD 1 at

11   39-68.) At trial, however, he refused to testify. He stated he did not remember anything that

12   happened and then told the court that he was done testifying. He attempted to leave before being

13   excused. (LD 7 at 120-26.) The court concluded that it was "obvious" the witness was refusing

14   to testify and therefore concluded he was unavailable as a witness. (LD 7 at 126.) Defense

15   counsel then objected: "I object. I don't - - I think he did answer some questions. I don't think he

16   was - - specific questions from the prelim or other issues were posed to him so I'd object to him

17   being found unavailable." (LD 7 at 127.) The trial court then found the witness unavailable.

18           Since defense counsel did enter an objection, Petitioner's claim fails. Nevertheless,

19   Petitioner argues that counsel should have requested a special hearing to determine whether the

20   witness was in fact unavailable. Petitioner maintains that a special evidentiary hearing is required

21   before a witness can be declared unavailable. None of the cases cited by Petitioner support his

22   position that such a hearing is required prior to declaring a witness unavailable. Moreover, there

23   is no Supreme Court authority which would require such a hearing. In any case, even if the trial

24   court had conducted an evidentiary hearing, Petitioner submits no reasonable argument why the

25   trial court's conclusion would have been any different after having already concluded it was

26   "obvious" the witness was refusing to testify. Therefore, the claim is without merit.

27           f.    Failure to File Motion for Acquittal

28           In his next claim, Petitioner contends that defense counsel was ineffective in failing to file

9

1  a motion for acquittal on the charge of dissuading a witness.  The claim is without merit since the

2  motion would have been futile, and counsel cannot be faulted for failing to bring a meritless

3  motion.

4       Petitioner admits that he contacted the witness and advised him not to testify.  (Pet. at 37-

5  38.)  He argues that the evidence didn't show he had malicious intent, only that he was "trying to

6  resolve the dispute informally."  (Pet. at 38.)  Under California law, however, malicious intent

7  can be satisfied by showing an intent "to thwart or interfere in any manner with the orderly

8  administration of justice."  People v. Wahidi, 222 Cal.App.4th 802, 809 (2013).  Thus, even under

9  Petitioner's characterization, the motion for acquittal would have been meritless.  Counsel was

10  therefore not deficient, and Petitioner cannot show prejudice since a motion for acquittal would

11  have been rejected.

12       g.   Failure to Secure Presence of Witness Jenny Verdusco

13       Petitioner claims counsel was ineffective by misadvising Petitioner that he was unable to

14  locate witness Jenny Verdusco.  Petitioner states he repeatedly requested that counsel conduct

15  interviews of Verdusco since she was a percipient witness to the crimes.  He faults counsel for

16  failing to take the steps necessary to contact her, and as a result, he lost a potentially meritorious

17  defense.

18       Petitioner first raised this issue during a Marsden[4] hearing before the trial court.  (LD 16,

19  Ex. H.)  According to the transcript of that hearing, defense counsel made extensive efforts to

20  locate and secure Verdusco as a witness.  (LD 16, Ex. H at 5-11.)  In response, the trial court

21  remarked, "I don't know what else the Public Defender's Office could do insofar as pinpointing a

22  location that what's been done." (LD 16, Ex. H at 11.)  The court further stated, "Sir, it's not a

23  matter of choosing - - your attorney not choosing to find this person. It's a matter of your attorney

24  not being successful despite diligent and reasonable efforts to do so."  (LD 16, Ex. H at 11.)

25  Therefore, Petitioner's claim that counsel failed to act diligently is completely unsupported.

26       In addition, Petitioner cannot demonstrate prejudice.  He claims Verdusco could have

27

28  _____
   [4] People v. Marsden, 2 Cal.3d 118 (1970).

10

1  testified to his version of events.  However, Petitioner was acquitted of the attempted murder

2  charge and the lesser-included offense.  He was convicted of being a felon in possession of a

3  firearm and ammunition, but he admitted to possessing a gun and shooting the victim.

4  Verdusco's testimony could not have altered this finding.  In addition, Petitioner fails to show

5  how Verdusco's testimony could have had any bearing on the witness dissuasion charge.

6  Accordingly, the claim is without merit.

7              2.  Marsden Motion

8        Petitioner claims that the trial court erred in denying his Marsden motions for substitution

9  of counsel.  During these hearings, he advised the trial court that there was an irreparable

10  breakdown in communications.  He complained that his attorney failed to investigate witnesses,

11  prepare himself for the case, and investigate the law and facts of the case.  The trial court denied

12  all three Marsden motions.

13        Petitioner raised his claim on state habeas review.  In the last reasoned decision, the

14  Tulare County Superior Court rejected the claim, stating: "Petitioner filed extensive claims none

15  of which establish a prima facie basis for relief."  (LD 13 at 3.)

16        First, the Court finds that Petitioner fails to present a cognizable ground for relief.

17  Petitioner challenges the trial court's application of People v. Marsden, 2 Cal.3d 118 (1970), in its

18  determinations in three Marsden hearings.  Generally, the interpretation and application of state

19  laws are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting

20  Lewis v. Jeffers, 497 U.S. 764, 780 (1990)) ("We have stated many times that 'federal habeas

21  corpus relief does not lie for errors of state law.'"); Gilmore v. Taylor, 508 U.S. 333, 348-49

22  (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

23  constitutional violation, may not be corrected on federal habeas"); Sawyer v. Smith, 497 U.S.

24  227, 239 (1990) (quoting Dugger v. Adams, 489 U.S. 401, 409 (1989) ("[T]he availability of a

25  claim under state law does not of itself establish that a claim was available under the United

26  States Constitution").  Petitioner contends the trial court erroneously denied his request to

27  substitute counsel.  The claim concerns the interpretation and application of state law and is

28  therefore not cognizable on federal habeas review.  Moreover, federal courts are bound by state

1  court rulings on questions of state law.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th

2  Cir.1989).  For this reason, the claim should be rejected.

3      Nevertheless, the Ninth Circuit has stated that the denial of a Marsden motion to substitute

4  counsel can implicate a criminal defendant's Sixth Amendment right to counsel and is properly

5  considered in federal habeas corpus, Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475

6  (9th Cir.1994), and the Sixth Amendment requires an inquiry into the grounds for a motion to

7  remove counsel.  Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir.2000).  However, as noted by

8  Respondent, there is no direct precedent from the Supreme Court which holds that a denial of a

9  motion to substitute counsel can be unconstitutional.  "[I]t is not an unreasonable application of

10  clearly established Federal law for a state court to decline to apply a specific legal rule that has

11  not been squarely established by [the Supreme] Court."  Knowles, 556 U.S. at 122.  Therefore,

12  Petitioner's allegation that the trial court erred in denying his motion to remove counsel does not

13  present a cognizable claim on habeas review.

14      In any event, the Supreme Court has granted state courts a great deal of leeway on the

15  issue of attorney substitution. For instance, the Supreme Court has recognized that a defendant is

16  entitled to counsel who "function[s] in the active role of an advocate." Entsminger v. Iowa, 386

17  U.S. 748, 751 (1967); see also United States v. Cronic, 466 U.S. 648, 656 (1984); Anders v.

18  California, 386 U.S. 738, 743 (1967).  However, the Court pointed out that the Sixth Amendment

19  does not guarantee a "meaningful relationship" between an accused and his counsel,  Morris v.

20  Slappy, 461 U.S. 1, 13-14 (1983), and absent a showing that "counsel actively represented

21  conflicting interests," the defendant "has not established the constitutional predicate for his claim

22  of ineffective assistance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

23      In this case, it is clear from the record that the state court ruling was not contrary to or an

24  unreasonable application of Supreme Court precedent.  There was no evidence of a complete

25  collapse in the relationship. There was also no evidence of a problematic conflict of interest.

26  Petitioner complained that he had a conflict of interest with the Public Defender's Office because

27  the office was "leaking" information to a woman who was the former foster daughter of another

28  attorney in the Public Defender's Office.  The woman was also a potential witness for the

12

1  defense.  (LD 16, Ex. H at 2-5, 12.)  Petitioner brought this issue to the trial court's attention, and

2  the trial court determined that it was completely normal for the Public Defender's Office to share

3  information with a potential witness.  (LD 16, Ex. H at 12.)  Petitioner fails to show any conflict

4  of interest.  In light of the record, Petitioner fails to demonstrate that the state court's rejection of

5  his claim was contrary to or an unreasonable application of the Supreme Court authority. The

6  claim should be rejected.

7          3.   Unavailability of Witness

8          Petitioner next claims that the trial court erred when it concluded that the victim,

9  Lawrence Bierman, was unavailable to testify.  The claim was raised in state habeas review and

10  rejected for failure to state a prima facie basis for relief.  (LD 13 at 3.)

11          As correctly argued by Respondent, Petitioner's challenge to the trial court's use of state

12  law in its determination that the witness was unavailable, fails to present a federal claim.  The

13  interpretation and application of state laws are not cognizable on federal habeas. Estelle, 502 U.S.

14  at 67 (quoting Lewis, 497 U.S. at 780) ("We have stated many times that 'federal habeas corpus

15  relief does not lie for errors of state law.'").  Petitioner claims the trial court should have inquired

16  further into the witness's availability or attempt to hold him in contempt of court.  Such a claim is

17  not cognizable on federal habeas review.

18          To the extent he contends the state court's determination violates the Constitution, his

19  claim is meritless.  He fails to point to any Supreme Court authority which would require the trial

20  court to conduct a particular inquiry prior to ruling on whether a witness is unavailable to testify.

21  For these reasons, the claim should be denied.

22          4.   Sentencing Error

23          In his next claim, Petitioner contends that the trial court erred and abused its discretion

24  when it found that Petitioner's prior conviction for violation of Cal. Penal Code § 245(a)(1)

25  qualified as a strike offense in order to impose a third strike.

26          Such a claim does not give rise to a federal question cognizable on federal habeas review.

27  Lewis v. Jeffers, 497 U.S. 764 (1990); Sturm v. California Youth Authority, 395 F.2d 446, 448

28  (9th Cir. 1967) ("a state court's interpretation of its [sentencing] statute does not raise a federal

13

1     question"). In order to state a claim for relief, Petitioner must demonstrate that the state

2     committed sentencing error, and that the error was "so arbitrary or capricious as to constitute an

3     independent due process" violation. Richmond v. Lewis, 506 U.S. 40 (1992). Petitioner has

4     failed to demonstrate such a violation here, because on its face, the petition shows no sentencing

5     error or arbitrariness. As previously noted, the record of conviction shows that Petitioner's

6     conviction under § 245(a)(1) was for assault with a deadly weapon, which is in fact a strike

7     offense. (LD 16, Ex. F at 185.) The claim should be denied.

8          5.   Apprendi Error

9          In his final claim for relief, Petitioner alleges that the trial court violated the rule in

10     Apprendi v. New Jersey, 530 U.S. 466 (2000), when it determined that his conviction under §

11     245(a)(1) qualified as a strike. Petitioner argues that at the time he committed the offense, Cal.

12     Penal Code § 245(a)(1) could be violated by assault with means likely to produce great bodily

13     injury or by assault with a deadly weapon. Assault with a deadly weapon is a strike offense, but

14     assault with means likely to produce great bodily injury is not a strike offense.

15          Petitioner's claim is meritless because there was no factual dispute to be determined. The

16     abstract of judgment clearly showed that Petitioner was convicted of assault with a deadly

17     weapon. (LD 16, Ex. F at 24.) Thus, Apprendi was not violated.

18          Petitioner cites to Wilson v. Knowles, 638 F.3d 1213, 1215 (9th Cir. 2011) in support of

19     his argument. Wilson does not support Petitioner's claim. Wilson is a Ninth Circuit case and is

20     not clearly established Supreme Court precedent; therefore, it cannot be used to show that the

21     state court determination was unreasonable. In addition, the Wilson court found additional facts

22     which were not necessary to the defendant's conviction. It found that the defendant personally

23     inflicted injury, that the injury was great, and that the victim was not an accomplice. Id. The

24     Ninth Circuit found that Apprendi was violated, because the sentencing judge determined

25     additional disputed facts in order to increase his sentence. Id. The Ninth Circuit noted that such

26     facts were not historical, judicially noticeable facts. Id. In this case, that Petitioner committed

27     assault with a deadly weapon was a judicially noticeable and historical fact. The abstract of

28     judgment clearly reflects this.

1    In any case, the claim fails because there is no clear Supreme Court precedent addressing

2    the exception in Apprendi.  In Apprendi, the Supreme Court held that any fact that exposes a

3    criminal defendant to a higher range of penalties must be determined by a jury.  Apprendi, 530

4    U.S. at 490.  However, the Court carved out an exception: A judge may find "the fact of a prior

5    conviction." Id.  Since then, courts have "debated and disagreed about the scope of this

6    exception, and the Supreme Court hasn't stepped in to draw a clear line for us." Wilson, 638 F.3d

7    at 1216 (Kozinsky, J., dissenting).  Because the Supreme Court has never clearly defined the

8    contours of the exception, Petitioner cannot demonstrate that the state court determination was

9    contrary to or an unreasonable application of Apprendi. The claim should be denied.

10   **IV.    RECOMMENDATION**

11       Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be

12   DENIED with prejudice on the merits.

13       This Findings and Recommendation is submitted to the United States District Court Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

15   Local Rules of Practice for the United States District Court, Eastern District of California.  Within

16   twenty-one days after being served with a copy of this Findings and Recommendation, any party

17   may file written objections with the Court and serve a copy on all parties.  Such a document

18   should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies

19   to the Objections shall be served and filed within ten court days after service of the Objections.

20   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

21   The parties are advised that failure to file objections within the specified time may waive the right

22   to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

     IT IS SO ORDERED.
24

25       Dated:  __**December 27, 2017**__              ___**/s/ Jennifer L. Thurston**__
                                                        UNITED STATES MAGISTRATE JUDGE
26

27

28